UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TYRONE MCDOWELL,

                              Plaintiff,

v.

DENIS MCDONOUGH, Secretary,
Department of Veterans Affairs,

                              Defendant.

_____

**REPORT AND
RECOMMENDATION**


**Case No. 1-21-cv-00338-JLS-JJM**

   *Pro se* plaintiff Tyrone McDowell seeks recovery for alleged racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq*., in the course of his employment by the Department of Veterans Affairs ("VA"). Complaint [1].[1] Before the court is VA Secretary McDonough's motion seeking dismissal of the Complaint pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) for failure to state a claim upon which relief can be granted [33],[2] which has been referred to me by District Judge John L. Sinatra, Jr. for initial consideration [17].

   Having reviewed the parties' submissions [33, 41, 43], for the following reasons I recommend that the motion be denied.

---

[1]  Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

[2]  Although Secretary McDonough did not file a Notice of Motion along with his Memorandum of Law In Support of Motion to Dismiss [33], this was apparently an oversight, as the Certificate of Service [33-1] states that a Notice of Motion was served upon McDowell. Therefore, in accordance with Rule 61, I will disregard his failure to docket the Notice of Motion as harmless error.

**BACKGROUND**

McDowell alleges that between October 2010 and January 2017 he was required to work two full-time positions (Health Systems Specialist and Controlled Substance Coordinator) while only being compensated for one of them, whereas none of his white counterparts were subject to that requirement. Complaint [1] at 7; Opposition [41] at 3.[3]  He further alleges that once he complained of this treatment, the VA refused to timely provide him a copy of his 2016 performance review, thereby preventing him from applying for other positions for which he was qualified. Complaint [1] at 7-8; Opposition [41] at 3-5.

In moving to dismiss, the Secretary argues that McDowell was not subject to an adverse employment action, that he failed to allege a nexus between the alleged adverse employment action and his race or color, and that he failed to adequately allege retaliation. *See* Secretary's Memorandum of Law [33].

**DISCUSSION**

A.     *Pro Se* **Pleading Requirements.**

Courts must construe a "*pro se* complaint liberally to raise the strongest arguments that it suggests. To survive dismissal, however, a complaint must plead enough facts to state a claim to relief that is plausible on its face, and that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Threadbare recitals

---

[3]     Because McDowell is acting *pro se*, I "deem [his] complaint to include the facts contained in his memorandum of law filed in response to [the] motion to dismiss". Drake v. Delta Air Lines, Inc., 147 F.3d 169, 170, n.1 (2d Cir. 1998); Turner v. Procopio, 2016 WL 11483436, *3 (W.D.N.Y. 2016).

of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

Costabile v. New York City Health and Hospitals Corp., 951 F.3d 77, 80-81 (2d Cir. 2020).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . . The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## B.     Has McDowell Plausibly Alleged Discrimination?

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin". 42 U.S.C. §2000e-2(a)(1). "To state a Title VII . . . discrimination claim, a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position held; 3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." Belton v. Borg & Ide Imaging, P.C., 512 F.Supp.3d 433, 441 (W.D.N.Y. 2021).

In moving to dismiss McDowell's claim of discrimination, the Secretary argues that McDowell's "allegations do not support that he was subject to an 'adverse employment action' . . . . Neither additional job duties nor a delayed performance appraisal is an 'adverse employment action' within the meaning of Title VII". Secretary's Memorandum of Law [33] at 5. "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities . . . . Examples of materially adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities,

or other indices unique to a particular situation". Feingold v. State of New York, 366 F.3d 138, 152 (2d Cir. 2004).

I agree with the Secretary that, for purposes of a discrimination claim, "[t]he delay of an annual performance review is not an adverse employment action". *See* Secretary's Memorandum of Law [33] at 13, *quoting* Elliott v. National American Insurance Co., 2009 WL 10703152, *3 (W.D. Okla. 2009). However, I do not agree that assigning McDowell additional duties cannot constitute an adverse employment action. Although the Secretary argues that "[a]n increased workload in the same job . . . does not constitute an adverse employment action" (Secretary's Memorandum of Law [33] at 12), McDowell is not complaining about an increased workload "in the same job". "[T]here is a significant difference between additional job duties and/or collateral duties and the position description of the Controlled Substance Coordinator which has been . . . categorized as Full-Time Employee (FTE) position". McDowell's Opposition [41] at 6. He alleges that "the VA assigned him the full-time position of Controlled Substance Coordinator (CSC) while [he] was already performing his primary full-time position as Health Systems Specialist . . . . Plaintiff was directed to work two full-time positions without proper compensation for over six years". Id. at 3 (emphasis in original).

"There are no 'bright-line rules' for determining whether an employee has suffered an adverse employment action." Jaeger v. North Babylon Union Free School District, 191 F. Supp. 3d 215, 226 (E.D.N.Y. 2016). Therefore, "what ultimately constitutes an adverse employment action is assessed on a case-by-case basis". Adlah v. Emergency Ambulance Services, 2018 WL 3093972, *5 (E.D.N.Y. 2018). "[T]he denial of pay increases [can] constitute adverse employment actions", Elliott, 2009 WL 10703152, *3, and requiring McDowell to work

two full-time positions, while paying him only for one of them, would certainly seem to fit this definition.

The Secretary also argues that McDowell fails "to allege a nexus between the alleged adverse employment action and his race or color". Secretary's Memorandum of Law [33], Point I. However, "at the initial stage of a litigation, the plaintiff's burden is minimal - he need only plausibly allege facts that provide at least minimal support for the proposition that the employer was motivated by discriminatory intent." Adlah, 2018 WL 3093972, *6. "The facts required . . . to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015)

"Whether the facts give rise to a plausible inference of discrimination is a flexible standard that can be satisfied differently in differing factual scenarios." Jaeger, 191 F. Supp. 3d at 229. McDowell alleges that none of his "white counterparts" were "forced to assume a second full-time employee position" (McDowell's Opposition [41] at 5), that he "was the only black direct report out of 34 and was selected and forced to assume the full-time position of CSC as an additional duty" (id. at 7-8), and that "his white counterparts were performing the duty of CSC as a full-time position while he was assigned the responsibility as CSC as a collateral duty". Id. at 8. These allegations create at least a "minimal inference of discriminatory motivation". Littlejohn, supra.

**B. Has McDowell Plausibly Alleged Retaliation?**

Title VII also prohibits an employer from "discriminat[ing] against any of his employees . . . because he has opposed any practice made an unlawful employment practice by

this subchapter, or because he has made a charge, testified, assisted, or participated in any

manner in an investigation, proceeding, or hearing under this subchapter". 42 U.S.C. §2000e-

3(a).

McDowell alleges that not only did the VA discriminate against him in the terms

and conditions of his employment, but it also retaliated against him for complaining about

discrimination, by failing to timely provide him with a copy of his 2016 performance evaluation.

*See* Complaint [1] at 7, 8; Opposition [41] at 4 ("[prior to Plaintiff initiating contact with ORM

[Office of Resolution Management] to report discrimination, [in] his previous 13 years of

employment with the VA he always received his performance appraisal in a timely fashion.

However, after contacting ORM, the VA refused to give Plaintiff his performance appraisal

causing him to miss out on multiple employment promotion opportunities with the Department

of Homeland Security").[4]

"To establish a prima facie case of retaliation, an employee must show that (1)

[he] was engaged in protected activity; (2) the employer was aware of that activity; (3) the

employee suffered a materially adverse action; and (4) there was a causal connection between the

protected activity and that adverse action." Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir.

2012). "However, in order to recover for retaliation for having filed such a complaint, the

plaintiff need not prove that [the] underlying complaint of discrimination had merit." Id.

I have already concluded that the VA's alleged delay in providing McDowell with

his performance appraisal is not an "adverse employment action" for purposes of a

discrimination claim. However, "in the context of a Title VII retaliation claim, an adverse

---

[4]      McDowell alleges that he was also "subjected to numerous discriminatory/retaliatory
employment actions", and that his EEOC claim listed "a total of 14 events". Complaint [1] at 7. However,
since he does not describe these other actions or events, I do not consider them to be part of this case.

employment action is any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination". <u>Vega v. Hempstead Union Free School District</u>, 801 F.3d 72, 90 (2d Cir. 2015); <u>Burlington Northern and Santa Fe Railway Co. v. White</u>, 548 U.S. 53, 68 (2006). "This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII: The antiretaliation provision, unlike the substantive discrimination provision, is not limited to discriminatory actions that affect the terms and conditions of employment." <u>Vega</u>, 801 F.3d at 90. *See also* <u>Belton v. Borg & Ide Imaging, P.C.</u>, 512 F. Supp. 3d 433, 446 (W.D.N.Y. 2021) ("'[a]dverse employment action' in the retaliation context is broader than for discrimination claims").

    "[T]he significance of any given act of retaliation will often depend upon the particular circumstances. Context matters . . . . [A]n act that would be immaterial in some situations is material in others." <u>Burlington Northern</u>, 548 U.S. at 69. "[T]he standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint." <u>Id.</u> McDowell alleges that the delay in providing him with his performance appraisal prevented him from applying for other employment opportunities in the Department of Homeland Security, because "[i]f your last two performance appraisals were not included your application would be deemed incomplete". Complaint [1] at 8. Whether or not he would have obtained those positions is not dispositive as to this claim, for "to retaliate by excluding an employee from [an event] that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination". <u>Burlington Northern</u>, 548 U.S. at 69.

    The Secretary argues that "[t]o assert a retaliation claim, a complainant is required to have had a good faith, reasonable belief that he was opposing an employment practice made

unlawful by Title VII . . . . Here, increased work to a promoted employee represents an ordinary tribulation of the workplace and cannot amount to a good faith, reasonable belief of discrimination, particularly where the Complaint pleads no discriminatory nexus". Secretary's Memorandum of Law [33] at 13. I disagree. As previously discussed, McDowell alleges more than a mere increased workload, and sets forth a plausible basis for concluding that there was a discriminatory nexus.

Finally, the Secretary argues that "if an employer's conduct before and after an employee complaint is consistent, the post-complaint conduct is not retaliatory . . . . Here, while Plaintiff claims that the delay in providing his performance appraisal was retaliatory, he also admits that the delay began before he filed an EEOC claim".  Secretary's Memorandum of Law [33] at 14 (emphasis in original). McDowell responds that his "initial contact with the Office of Resolution Management (ORM) began on September 29, 2016, prompting [him] and the VA to participate in Alternative Dispute Resolution (ADR) on November 28, 2016, which resulted in no resolution. Plaintiff's initial claim originated before the end of the fiscal year and before performance appraisals are scheduled . . . . However, after contacting ORM, the VA refused to give Plaintiff his performance appraisal". McDowell's Opposition [41] at 3-4.

"To be sure, informal protests of discriminatory employment practices, including making complaints to management can constitute protected activity", provided "that the employer is put on notice that the plaintiff believes [ ]he is being discriminated against on the basis of a protected characteristic." Belton, 512 F. Supp. 3d at 445. Since McDowell alleges that he complained to the VA concerning discrimination before he filed an EEOC complaint (McDowell's Opposition [41] at 14), and that the delay in processing his performance evaluation

followed that initial complaint, he has adequately alleged a claim for retaliation. Whether he can ultimately prove that the VA discriminated or retaliated against him is a question for another day.

**CONCLUSION**

For these reasons, I recommend that the Secretary's motion to dismiss [33] be denied. Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the clerk of this court by January 9, 2023. Any requests for extension of this deadline must be made to Judge Sinatra.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision".  Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance.  Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: December 21, 2022

_____
JEREMIAH J. MCCARTHY
United States Magistrate Judge

- 9 -